IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JACKSON NATIONAL LIFE          §
INSURANCE COMPANY,             §
                              §
                  Plaintiff,   §
                              § Civil Action No. 3:16-CV-0854-D
VS.                            §
                              §
LANCE DOBBINS, et al.,         §
                              §
                  Defendants.  §

MEMORANDUM OPINION
AND ORDER

In this interpleader action brought by plaintiff Jackson National Life Insurance Company ("Jackson National") to determine ownership of life insurance proceeds, defendants-claimants Lance Dobbins ("Lance") and L&R Cattle, LLC ("L&R"), and Small Business Lending, Inc. d/b/a Newtek Small Business Lending ("Newtek") and the Federal Deposit Insurance Corporation ("FDIC"), move for summary judgment on all claims to the proceeds. Jackson National also moves for summary judgment on its claim for declaratory relief that the amount Jackson National deposited with the court is proper under the terms of the life insurance policy at issue. For the reasons explained, the court grants Lance and L&R's motion as to L&R's right to the proceeds, denies Newtek and the FDIC's motion, grants Jackson National's motion, awards L&R the interpleaded funds plus accrued interest, and dismisses the balance of this action by judgment filed today.

I

This case is the subject of two prior memorandum opinions and orders. *See Jackson Nat'l Life Ins. Co. v. Dobbins*, 2016 WL 4268770 (N.D. Tex. Aug. 15, 2016) (Fitzwater, J.) ("*Jackson Nat'l I*"); *Jackson Nat'l Life Ins. Co. v. Dobbins*, 2017 WL 86145 (N.D. Tex. Jan. 10, 2017) (Fitzwater, J.) ("*Jackson Nat'l II*"). The court therefore will recount only the background facts and procedural history that are pertinent to this decision.

This interpleader action involves a dispute over a life insurance policy ("the Policy") that insured the life of decedent Larry Dobbins ("Dobbins"). Dobbins applied for a $1 million term life insurance policy from Valley Forge Life Insurance Company ("Valley Forge") in November 1999. The application—completed and certified by a Valley Forge Agent—indicated that Dobbins' birth date was "11-11-47." FDIC App. 3-4. When Dobbins completed the application's Medical Supplement, however, he listed he birth date as "11-11-46." *Id.* at 6. Valley Forge's records dated November 24, 1999 and December 3, 1999 flagged this discrepancy. While these forms also listed Dobbins' "Date of Birth" as "11/11/1947," under a heading titled "Special Instructions," they noted that the "D.O.B. is incorrect" and that the correct birth date is "11/11/1946." FDIC App. 11-12. Valley Forge later issued the Policy—which insured Dobbins' life in the sum of $1 million—to Dobbins on December 28, 1999. Although the Policy listed Dobbins' age as "52," the parties agree he was actually 53 years old.

The Policy provided specific methods for both changing the beneficiary and assigning it to another party. To change the beneficiary, the insurer "must receive Written Notice

informing [the insurer] of the change." Lance App. 8. The Policy also stated that it was assignable, but it provided that the insurer was "bound by an Assignment only if [the insurer] receive[d] a duplicate of the original Assignment at Our Executive Office." *Id.*

In accordance with the Policy's terms, in 2001 Dobbins changed the primary beneficiary to Dobbins Enterprises of Thomas, L.P. ("Dobbins Enterprises"), and the contingent beneficiaries to Lance and Lorri Dobbins. These primary and contingent beneficiaries remained unchanged for the remainder of Dobbins' life.

In April 2007 Dobbins obtained a loan (the "Loan") from Bank of Union in El Reno, Oklahoma ("Bank of Union"). To obtain the Loan, Dobbins signed papers purporting to assign the Policy as collateral (the "2007 assignment"). The agreement provided that Dobbins gave Bank of Union, its successors, and assigns "[t]he sole right to collect from the Insurer the new proceeds of the Policy when it becomes a claim by death or maturity." P. App. 24. After an agent for Bank of Union contacted Valley Forge requesting that the assignment be recognized, Valley Forge sent Bank of Union and Dobbins a Collateral Assignment form. Bank of Union sent Valley Forge a partially completed form in May 2007. Valley Forge then informed Dobbins and Bank of Union that it did not accept fax assignment requests and that the form was incomplete. It enclosed a new Collateral Assignment form and requested that Dobbins and Bank of Union complete and return the form to Valley Forge by mail. Valley Forge never received the new Collateral Assignment form.

The parties at interest shifted between 2007 and 2015. Through a series of mergers,

Jackson National became holder of the Policy. Between 2014 and 2015, Jackson National sent three separate notices to Bank of Union and Dobbins indicating that additional paperwork was needed for Jackson National to recognize the 2007 assignment. Jackson National attached Collateral Assignment forms to each notice. Neither Bank of Union nor Dobbins responded to these letters.

In February 2015 Dobbins submitted the paperwork to make Lance the Policy owner. After being listed as owner, Lance assumed making premium payments on the Policy. A Memorandum of Insurance provided by Jackson National as of November 6, 2015 shows that the primary beneficiary remained Dobbins Enterprises.

Separately, Bank of Union folded and the FDIC acquired all of its assets as its receiver. Newtek now acts of the servicer of the Loan. By 2015, the Loan itself had fallen into default.

Dobbins died on November 12, 2015. Within months of his death, L&R,[1] Lance, and Newtek on behalf of the FDIC submitted claims for the full proceeds of the Policy. Faced with competing claims, Jackson National filed the instant complaint in interpleader.

Jackson National moved to interplead funds and for dismissal from the case, stating that the amount in question was the Policy's $1 million benefit. In *Jackson National I* the court granted Jackson National's request for dismissal, conditioned on its depositing the $1 million death benefit into the court's registry. *Jackson Nat'l I*, 2016 WL 4268770, at *3.

---

[1] L&R acquired all the rights and assets of Dobbins Enterprises when the two entities merged on January 25, 2015.

Jackson National, however, deposited only $910,888.82 (the "Adjusted Amount") with the court and later moved to amend the court's order permitting interpleader. It alleged that because Dobbins' age was misstated on the Policy application, the Policy's terms permitted Jackson National to adjust the proceeds downward to reflect the amount the premiums paid would have purchased using the correct date of birth.[2] Therefore, Jackson National maintained that it need not deposit the entire sum of $1 million with the court to be dismissed. It stated that it discovered the error while examining Dobbins' death certificate, but that in its prior motion it mistakenly listed the Policy's original $1 million proceeds as the amount to be interpleaded. Lance, L&R, Newtek, and the FDIC opposed Jackson National's motion to amend. The court denied the motion in *Jackson National II*, holding that Jackson National's requested relief—which defendants-claimants contested—was not available to an interpleader plaintiff through a motion to amend. *Jackson National II*, 2017 WL 86145, at *2.

After amending its interpleader complaint to reflect the Adjusted Amount, Jackson National now moves for summary judgment on its claim for declaratory relief that the Adjusted Amount is the proper sum to be deposited with the court under the Policy.

_____

[2]Section 3.15 of the Policy provides: "[i]f the age or sex of the Insured has been misstated, we will adjust the policy proceeds to the amount which the premiums paid would have purchased the correct age or sex." P. App. 14. Jackson National therefore contends that the correct amount of proceeds under the Policy is $907,502.02. Jackson National deposited $910,888.82 with the court after accounting for interest accumulated through November 3, 2016, adding a partial refund of the monthly premium paid for the month of Dobbins' death, deducting the outstanding premium due, and attorney's fees agreed to in *Jackson National I. See* P. Br. 5-6. No defendant-claimant contests these additional calculations.

Defendants-claimants oppose Jackson National's motion. They also move for summary judgment on their claims to the Policy proceeds. Lance and L&R have filed a joint motion as have the FDIC and Newtek.

## II

The court "has broad powers in an interpleader action." *Rhoades v. Casey*, 196 F.3d 592, 600 (5th Cir. 1999). Interpleader actions are decided through two stages:

> First, the court determines whether the requirements for an interpleader action have been met by deciding whether there is a single fund at issue and whether there are adverse claimants to that fund. Second, if the court determines that the requirements for interpleader are met the court determines the rights of the claimants.

*Jackson Nat'l I*, 2016 WL 4268770, at *2 (citing *Rhoades*, 196 F.3d at 600).

Although no defendant-claimant challenges the propriety of the interpleader action itself, the court confirms that it is proper under Fed. R. Civ. P. 22. The proceeds of the Policy are a single fund. There are multiple claimants with competing claims for that fund, which may expose the plaintiff to multiple liability. *See Tittle v. Enron Corp.*, 463 F.3d 410, 423 (5th Cir. 2006); *Wausau Inc. Cos. v. Gifford*, 954 F.2d 1098, 1100 (5th Cir. 1992). Jackson National has deposited the Adjusted Amount with the court, and the instant memorandum and opinion determines the propriety of that amount. Interpleader actions brought under Rule 22 "must be based upon the general jurisdiction statutes applicable to civil actions in the federal courts." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1710, at 581-52 (3d ed. 2001). 12 U.S.C. §

1819(b)(2)(A) provides that all civil actions by or against the FDIC are "deemed to arise under federal law." Therefore, the court holds that this interpleader action is properly brought.

## III

The court now considers the second stage of the interpleader analysis: whether Lance and L&R or the FDIC[3] has a superior claim to the fund at issue.

## A

Absent special circumstances, the second stage of interpleader "will proceed like any other action." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1714, at 638 (3d ed. 2001). Accordingly, if there is no genuine issue of material fact that requires proceeding to trial, the second stage may be adjudicated through summary judgment. *Rhoades*, 196 F.3d at 600.

A movant's summary judgment burden depends on whether the motion for relief is on a claim for which the movant will have the burden of proof at trial. In an interpleader action, each claimant must prove the claimant's right to the fund by a preponderance of evidence. *Id.* To be entitled to summary judgment on a claim for which the movant will have the burden of proof, the moving party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex. N.A. v. Prudential Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780

---

[3]Because Newtek submitted a claim on behalf of the FDIC, the court refers only to the FDIC in recounting their joint arguments.

F.2d 1190, 1194 (5th Cir. 1986)).  This means that the moving party must demonstrate that there are no genuine and material fact disputes and that the moving party is entitled to summary judgment as a matter of law.  *See Martin v. Alamo Cmy. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

B

1

The FDIC maintains that Dobbins' 2007 assignment of the Policy to Bank of Union gives the FDIC the superior claim to the Policy proceeds; that the assignment itself was valid; that because Bank of Union notified the insurer of its interest in the Policy, the assignment prevails over all subsequent interests; that only the insurer can enforce noncompliance with the Policy's terms for assignment; and that because Jackson National has interpleaded the proceeds, it has waived these conditions.  Lance and L&R respond that the FDIC has no interest in the Policy proceeds because the failure of the 2007 assignment to comply with the Policy's requirements renders the assignment invalid.

2

Oklahoma law provides that "a policy may be assignable or not assignable, as

provided by its terms."  Okla. Stat. Ann. tit. 36 § 3624 (West 2017).[4]  "[A]n assignee or pledgee of a life insurance policy in which the insured reserves the right to change the beneficiary has a right to the policy's proceeds superior to that of the beneficiary to the extent of the underlying debt."  *Prudential Ins. Co. of Am. v. Glass*, 959 P.2d 586, 592 (Okla. 1998).  "Under Oklahoma law, no particular words are necessary to effect a contractual assignment; rather, the intent of the parties governs whether an assignment has been made."  *Coosewoon v. Meridian Oil Co.*, 25 F.3d 920, 930 (10th Cir. 1994) (citing *Cobb v. Baxter*, 292 P.2d 389, 391-392 (Okla. 1956)).

Generally, "[p]rovisions with respect to formalities of assignment are for the benefit of the insurer, and the insurer alone can complain of noncompliance."  3 Couch on Ins. § 36:2, West (database updated Dec. 2017); *see also Alkire v. King*, 80 P.2d 309, 310 (Okla. 1938) ("The rule is well established that the provision in the policy requiring approval or

---

[4]The court agrees with the parties that Oklahoma law governs this case.  Where, as here, a court's jurisdiction is based on matters arising under federal law, the court "should apply federal common law choice of law principles[.]"  *Jimenez v. Sun Life Assur. Co. of Can.*, 486 Fed. Appx. 398, 406 (5th Cir. 2012) (per curiam); *accord Haynsworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 2009).  Federal conflicts of law rules are found in the Restatement (Second) of Conflicts of Laws.  *Jimenez*, 486 Fed. Appx. at 407.  Section 188 of the Restatement states that, when a contract does not provide a choice of law provision, the governing law is that of the state that "has the most significant relationship to the transaction and the parties" under given principles.  Restatement (Second) of Conflicts of Laws § 188 (1971).  These include the place of contracting, the place of negotiation of the contract, and the place of performance.  *Id.*  Moreover "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied[.]"  *Id.*  Here, the Policy did not contain a choice of law provision, and the parties entered into and executed the Policy in Oklahoma.  Therefore, the court applies Oklahoma law.

acceptance of the assignment is for the sole benefit of the company."). At the same time, however, the revocable beneficiary of a life insurance policy retains a vested interest in its proceeds upon the insured's death. *Carson v. Carson*, 26 P.2d 738, 742 (Okla. 1933); *O'Neil v. O'Neil*, 141 P.2d 593, 597 (Okla. 1942). "The insurer cannot by any act on its part, after the death of the insured, such as paying the money into court or otherwise, defeat the vested right of the beneficiary named in the policy." *Carson*, 26 P.2d at 742. Thus "to effect an assignment that will be valid as against a beneficiary, conditions in the policy must be complied with." 3 Couch on Ins. § 37:45 (citing *City Nat'l Bank of Lawton v. Lewis*, 176 P. 237, 239 (Okla. 1918) (per curiam) ("We must hold that, where a life insurance policy contains a provision setting forth the method and manner and the steps necessary to be taken to change the beneficiary, such provision is controlling, and that a valid assignment of the policy cannot be made, except as provided in the policy itself.")).

## 3

To obtain a loan from Bank of Union, Dobbins executed the 2007 assignment as collateral. Under the agreement, Dobbins gave Bank of Union, its successors, and assigns "[t]he sole right to collect from the Insurer the new proceeds of the Policy when it becomes a claim by death or maturity." P. App. 24. The 2007 assignment also provided that "any designation or change of beneficiary . . . shall be made subject to this assignment and to the rights of the Assignee hereunder." *Id.* The Policy states, however, that the insurer is "bound by an Assignment only if [the insurer] receives a duplicate of the Original Assignment." P.

App. 15.  Neither Valley Forge nor Jackson National ever received a duplicate of the 2007 assignment.  The Policy beneficiary since 2001 has been Dobbins Enterprises, and that interest vested in L&R—which had acquired all of Dobbins Enterprise's rights—at the time of Dobbins' death.

The FDIC maintains that noncompliance with the Policy's assignment terms is inconsequential.  It primarily relies on *Fidelity Mut. Life. Ins. Co. v. City Nat'l Bank of Fairmont*, 95 F. Supp. 276 (N.D. W.Va. 1950), contending that only the insurer can enforce the Policy's assignment requirements and that any requirements were waived when Jackson National filed a complaint for interpleader.  In *Fidelity* a husband assigned his life insurance policy to his wife as collateral for payments required by their separation agreement.  *Id.* at 277.  The wife did not comply with the policy's requirement that duplicates be sent to Fidelity's offices.  *Id.* at 279.  The husband subsequently assigned the same policy as collateral to City National Bank, which filed the required paperwork.  *Id.*  Upon the husband's death, Fidelity filed an interpleader action.  The court held that Fidelity had waived compliance with the policy's assignment requirements by placing the funds in interpleader.  *Id.* at 282.  Therefore, the wife's assignment prevailed as the first-in-time assignment.

Here, however, the dispute is not between two assignees, but instead between an assignee and a third person who is a vested beneficiary.[5]  In the only Oklahoma case

---

[5]*Alkire* does not control for similar reasons.  *See Alkire,* 80 P.2d 309.  There, no third person was named as the beneficiary.  The court held that, when the beneficiary is the

involving an assignee and a third person vested beneficiary, *Lewis*, 176 P. at 239, the panel held that "where a life insurance policy contains a provision setting forth the method and manner and the steps necessary to be taken to change the beneficiary, such provision is controlling, and that a valid assignment of the policy cannot be made, *except as provided in the policy itself*." (emphasis added). In doing so, the court held that the beneficiary's right "became vested immediately upon the death of the insured. There having been no valid assignment of the policy, the beneficiary was entitled to the immediate possession thereof when her rights became vested."[6] *Id.* at 240 (citations omitted). Similarly, in this case, the Policy had specific requirements for making assignments and changing the beneficiary. Neither Bank of Union nor Dobbins properly executed either of these requirements before Dobbins died, and the interests of the beneficiary (Dobbins Enterprises) vested.

Even if *Lewis* were not controlling, the FDIC's attempt to equate interpleader with the insurer's waiver of policy terms is unavailing. Oklahoma law is clear that, once a

---

insured's estate, the insured's assignment need not comply with the policy's requirements because "all rights normally held by the beneficiary belonged to the insured" and no third person had any interest in the policy. *Alkire*, 80 P.2d at 310-11 (citing *Chartrand v. Chartrand*, 3 N.E.2d 828, 830 (Mass. 1936)). Therefore, its precedential value is limited where the dispute is between a third person vested beneficiary and an assignee.

[6]The FDIC attempts to distinguish *Lewis* by noting that the alleged assignment in question was an attempted oral assignment, and that the court ultimately found that it was a pledge. Nevertheless, this does not overcome the court's explicit holding limiting valid assignments to those made "as provided by the policy itself." *Lewis*, 176 P. at 239. Moreover, *Lewis* has not been overruled by any subsequent case, as *Alkire* is distinguishable because there was no third person vested beneficiary. *See supra* note 5. Thus the FDIC is unable to demonstrate that *Lewis* is inapplicable.

beneficiary's rights in a policy have vested, the insurer's acts cannot undermine the beneficiary's interests. *Carson*, 26 P.2d at 742; *Am. Nat'l Ins. Co. v. Reid*, 108 F. Supp. 428, 429 (W.D. Okla. 1952) ("Obviously, the insurer cannot waive some non-ministerial requirement which would result in the taking away of a vested right."). And while some jurisdictions do view interpleader as an insurer's waiver of any policy requirements, "the payment of policy proceeds into court . . . after [] litigation was initiated (and of course after the death of the insured) does not constitute a waiver under Oklahoma law." *Dalton v. LeBlanc*, 350 F.2d 95, 99 (10th Cir. 1965) (citing *Carson,* 26 P.2d at 742; *Harjo v. Fox*, 146 P.2d 298, 302 (Okla. 1944)).

Insurers can freely waive assignment requirements before a beneficiary's rights vest.[7] But at no point during Dobbins' life did Valley Forge or Jackson National waive the Policy requirement that a duplicate of the original assignment be submitted to the insurers. Indeed, the insurers sent the proper Collateral Assignment forms to both Dobbins and Bank of Union no fewer than five times, the latest of which was in 2015. And even when Bank of Union sent in a partially completed form in 2007, Valley Forge insisted that Bank of Union resubmit a complete form with the specified missing information. Bank of Union never responded.[8]

---

[7]Under Oklahoma law, waiver is the voluntary and intentional relinquishment of a known right. *See, e.g., Barringer v. Baptist Healthcare of Okla.*, 22 P.3d 695, 701 (Okla. 2001).

[8]Nor, by citing *Brown v. Home Life Ins. Co. of N.Y.*, 3 F.2d 661, 663 (E.D. Okla. 1925), can the FDIC assert that it "substantially complied" with the Policy's requirements

Thus Lance and L&R Cattle have demonstrated "beyond peradventure" as a matter of fact that the insurers did not waive the assignment requirements before the rights of Dobbins Enterprises (and, in turn, L&R via merger with Dobbins Enterprises) vested upon Dobbins' death. The court therefore holds as a matter of law that Dobbins Enterprises (and, in turn, L&R via merger with Dobbins Enterprises) retains the superior claim to the Policy proceeds as the vested beneficiary over the parties claiming through an assignment never recognized by the insurers. The court grants Lance and L&R's motion for summary judgment and denies Newtek and the FDIC's motion for summary judgment.

IV

Jackson National moves for summary judgment on its claim for declaratory relief.

A

Jackson National contends that, because the Policy misstates Dobbins' age, the Policy's plain language permits Jackson National to appropriately adjust the proceeds and that the Adjusted Amount reflects the correct modification. As a result, it maintains that the Adjusted Amount is the proper amount due under the Policy.

Lance and L&R Cattle posit that Jackson Life is not permitted to reduce the Policy

_____

during Dobbins' life. In *Brown* the insured properly filled out and mailed the insurance company's change-of-beneficiary forms, and, when the insured died, the insurer was waiting to indorse the change until the insured's bankruptcy proceeding concluded. *Id.* The court found that the insured "substantially complied" with the required procedure when all that was needed was a formal indorsement. *Id.* Here, Bank of Union and Dobbins had yet to properly fill out the required forms despite the insurer's multiple requests, and therefore did not substantially comply with the Policy requirements.

proceeds.  They maintain that, because Jackson Life's predecessor in interest was aware of

Dobbins' correct birth date as early as November 1999, Jackson National has waived any

right to adjust the proceeds.  Lance also contends that, under Oklahoma law, the Policy's

incontestability provision prohibits Jackson Life from adjusting the Policy proceeds.

## B

### 1

The court begins with Lance and L&R's waiver defense.  Lance and L&R contend

that, through Valley Forge's actions, Jackson National has waived its right to adjust the

Policy for a misstatement of age.  They raise the issue of waiver for the first time in their

response to Jackson National's motion for summary judgment.

Under federal procedure, waiver is an affirmative defense that must be affirmatively

pleaded in a party's answer.  *See* Rule 8(c)(1).  An unpleaded affirmative defense cannot be

raised for the first time in response to a summary judgment motion.  *Cf. Cutrera v. Bd. of*

*Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not

raised in the complaint but, rather, is raised only in response to a motion for summary

judgment is not properly before the court.") (citation omitted).  Nevertheless, "a technical

failure to comply precisely with Rule 8(c) is not fatal.  Rather is it left up to the discretion

of the trial court to determine whether the party against whom the unpleaded affirmative

defense has been raised has suffered prejudice or unfair surprise."  *Levy Garden Partners*

*2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 633 (5th Cir. 2013)

(quotation marks and citation omitted).  Here, the FDIC properly raised the affirmative

defense of waiver in its answer and summary judgment briefing.[9]  Jackson National responded to this argument in its own briefing.  Therefore, Jackson National is not prejudiced by Lance and L&R's raising waiver in their summary judgment response.

2

Jackson National moves for summary judgment on an affirmative defense for which Lance and L&R will bear the burden of proof at trial.  Therefore, Jackson National can obtain summary judgment by pointing the court to the absence of evidence on any essential element of their affirmative defense.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the Jackson National does so, Lance and L&R must go beyond their pleadings and designate specific facts demonstrating that there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for Lance and L&R.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmovants' failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory where the nonmovants fail to meet this burden.  *Little*, 37 F.3d at 1076.

Under Oklahoma law, waiver is the voluntary and intentional relinquishment of a

---

[9]Because the court holds that the FDIC's claim to the Policy proceeds fails, the court does not address the additional arguments the FDIC makes regarding the propriety of the Adjusted Amount.

known right. *Barringer v. Baptist Healthcare of Okla.*, 22 P.3d 695, 701 (Okla. 2001). The party against whom the waiver is asserted must have both knowledge of its right and the intent to waive the right. *Murphy Oil USA, Inc. v. Wood*, 438 F.3d 1008, 1013 (10th Cir. 2006). Waiver may be accomplished either expressly or implicitly. *Crowell v. Thoreau Ctr. P'ship*, 631 P.2d 751, 752 (Okla. 1981). An implied waiver can be shown by conduct that warrants an inference of intent to relinquish. *Barringer*, 22 P.3d at 701. To make out a case of implied waiver of a legal right, however, "there must be a clear, unequivocal and decisive manifestation of the party's relinquishment of the right." *Id.*

When the evidence concerning waiver is conflicting or disputed, or when more than one reasonable inference may be drawn from the evidence, the existence of waiver is a question of fact for the jury. *Id.*; *Kincaid & Assocs. v. Black Angus Motel, Inc.*, 983 P.2d 1016, 1021 (Okla. 1999). When the facts are not disputed and are subject to only one interpretation, however, the question of waiver becomes one of law to be decided by the court. *See Barringer*, 22 P.3d at 701 (citing *Gen. Fin. Corp. v. Jackson*, 296 P.2d 141, 143 (Okla. 1956)).

3

Here, the operative facts are not in dispute. Valley Forge's records indicate that its agents discovered Dobbins' true birth date during the application process—as early as November 1999. Before issuing the Policy, Valley Forge accumulated three separate documents with Dobbins' proper birth date, including two in which Valley Forge had

acknowledged the correct birth date. Valley Forge later issued the Policy in December 1999 to Dobbins under the incorrect birth date that Valley Forge's agent had written on a different part of the application. Nearly two decades later, Valley Forge's successor in interest, Jackson National, is attempting to enforce the age adjustment clause and reduce the Policy proceeds accordingly.[10]

These facts do not indicate either express or implied waiver. Lance and L&R do not point to documents or statements in which the insurers expressly waived the age adjustment clause, so their defense must rely on implied waiver. But the facts would not enable a reasonable trier of fact to find, or the court to conclude as a matter of law, that Valley Forge had the required intent for such an implied waiver. Valley Forge's right to adjust the Policy proceeds did not exist until the moment it issued the Policy, since the age adjustment clause was a component of the Policy. Even if the court accepts that an agent of Valley Forge knew Dobbins' correct age before issuing the Policy, the age was ultimately misstated in the Policy—the very scenario envisioned by the age adjustment clause. Neither Valley Forge nor Jackson National took any action following the issuance of the Policy that could be deemed "a clear, unequivocal and decisive manifestation" of an intent to relinquish the right to adjust the Policy proceeds. *See Barringer*, 22 P.3d at 701. The Policy's plain language indicates that delay alone is not enough. The age adjustment clause simply states that the

---

[10]The age adjustment clause states that "[i]f the age or sex of Insured has been misstated [Jackson National] will adjust the policy proceeds to the amount which the premiums paid would have purchased at the correct age or sex." P. App. 14.

insurer "will adjust" the Policy proceeds in the event of misstated age—there is no time limit to adjust the proceeds. P. App. 14. For these reasons, the court holds that no reasonable jury could find, nor could the court conclude as a matter of law, that Valley Forge or Jackson National waived the age adjustment clause.

C

The court now turns to Jackson National's contention that the Adjusted Amount is proper under the Policy. Because Jackson National will have the burden of proving this claim at trial, to be entitled to summary judgment it "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex*, 878 F. Supp. at 962 (quoting *Fontenot*, 780 F.2d at 1194).

Jackson National maintains that the plain text of the Policy allows it to adjust Policy proceeds for misstatement of age. It posits that the incontestability clause's two-year time limit does not apply to an age adjustment because an adjustment is not a "contest" under the language of the Policy. Lance and L&R Cattle contend that the Policy's incontestability clause bars Jackson National from using the age adjustment clause more than two years after the day the Policy was issued.

The Policy contains an incontestability clause, as required by Oklahoma law. *See* Okla. Stat. tit. 36, § 4006. This clause provides that the insurance company "cannot contest this policy, except for non-payment of premiums, after it has been in force during the Insured's lifetime for 2 years from the" day the policy is issued. P. App. 14. The time limit

to contest the Policy, therefore, expired on December 28, 2001. At the same time, the Policy's age adjustment clause also states that "[i]f the age or sex of Insured has been misstated [Jackson National] will adjust the policy proceeds to the amount which the premiums paid would have purchased at the correct age or sex." *Id.*

Oklahoma law explicitly addresses how these two clauses should be harmonized.

> A clause in any policy of life insurance providing that such policy shall be incontestable after a specified period shall preclude only a contest of the validity of the policy, and shall not prelude the assertion at any time of defenses based upon provisions in the policy which exclude or restrict coverage . . . ; *nor shall it be construed to preclude adjustment at any time of the amount payable or benefits accruing under the policy for misstatement of age, whether or not such age adjustment provision is excepted in such clause.*

Okla. Stat. Ann. tit. 36, § 4015 (West 2017) (emphasis added).

Applying this statute, the court holds that the Policy's incontestability clause does not prohibit Jackson National from adjusting the Policy's proceeds due to a misstatement of age. Section 4015 provides that a incontestability clause required under Oklahoma law cannot be read to prevent adjustments for the misstatement of age "at any time." *Id.* This statute became operative in 1957, and thus controls over the older authorities on which Lance and L&R rely. *See, e.g., Lincoln Health & Acc. Ins. Co. v. Jones*, 52 P.2d 793, 797 (Okla. 1935). Therefore, the clause does not prohibit Jackson National from adjusting the Policy's proceeds to account for Dobbins' true age.

Unencumbered by the incontestability clause, the plain language of the Policy allows

Jackson National to adjust the Policy proceeds. The Policy misstates Dobbins' age. Accordingly, Jackson National can adjust the proceeds " to the amount which the premiums paid would have purchased at the correct age." P. App. 14. The court holds that Jackson National has demonstrated beyond peradventure that there is no genuine issue of material fact that the Adjusted Amount is proper under the Policy's terms. The court therefore grants Jackson National's motion for summary judgment on its claim for declaratory relief.

\*   \*   \*

For the reasons explained, the court grants Lance and L&R's motion as to L&R's right to the proceeds, denies Newtek and the FDIC's motion, grants Jackson National's motion, awards L&R the interpleaded funds in the Adjusted Amount, plus interest that accrued after the funds were deposited with the court, and dismisses the balance of this action by judgment filed today.

**SO ORDERED**.

January 25, 2018.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE